David Van Buren PEERY, Appellant,

v.

UNITED STATES, Appellee.

No. 01–CF–719.

District of Columbia Court of Appeals.

Argued March 30, 2004.

Decided May 13, 2004.

David Van Buren Peery, pro se. Joanne M. Vasco, appointed by the court, filed a brief for appellant.

Richard S. Basile, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, John R. Fisher, Barbara J. Valliere, and Julius Rothstein, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and RUIZ, Associate Judges, and KING, Senior Judge.

KING, Senior Judge.

David Van Buren Peery was convicted of five counts of second-degree theft (D.C.Code § 22–3811 (1996)). He contends his convictions should be vacated because: (1) the trial judge impermissibly shifted the burden of proof from the government to the defense, and (2) the trial court erred in denying his motion for judgment of acquittal (MJOA), when the government failed to present sufficient evidence to prove he knowingly used his corporate charge card for personal expenses without authority. We agree on the latter point and, therefore, reverse.

## I.

Peery, an attorney, began working for the law firm of Bernabei and Katz (B & K) in June of 1999 as "of counsel." In late June of 1999, he was issued a corporate American Express (AMEX) card, which he began using for both business and personal expenses. At the time the card was issued to Peery, B & K had no written policy regarding proper use of the corporate card. Furthermore, no oral instructions were provided by either of the partners or the office manager or anyone else in the firm regarding proper use of the card. He was never informed that he could not use the card to charge personal items.

On August 9, 1999, when B & K received the AMEX bill, Peery approached the office manager, Antonio Mapp, and told him that he "inadvertently" charged "a couple" of personal expenses to the card and that he would reimburse the firm. Mapp responded, "Okay." On August 10, 11, 12, 13 and 14, Peery again used the card to charge personal items. Those uses of the card were the basis for the theft charges for which Peery was convicted. On August 13, 1999, a summary of the bill was provided to Debra Katz, a named partner in the firm, who upon noticing the bill to be higher than normal, reviewed the itemized portion of the bill. She discovered the large number of apparently personal charges made by Peery.[1]

The next day, B & K decided to terminate Peery and drafted a letter to that effect, which was delivered to his Silver Spring, Maryland office. Peery first received a copy of the letter when he attempted to enter the firm on the afternoon of August 14, 1999 and was refused entry.

---

1. The exact amount is unresolved on the record, but Katz alleged that Peery had amassed approximately $3700 in personal charges between July and August.

## II.

■ We consider the claim of insufficiency in the light most favorable to sustaining the conviction, *Jones v. United States,* 716 A.2d 160, 162 (D.C.1998), giving deference to the factfinder's ability to weigh the evidence and make credibility and factual determinations. *Lewis v. United States,* 767 A.2d 219, 222 (D.C. 2001). Furthermore, in a bench trial, we will not reverse "unless an appellant has established that the trial court's factual findings are plainly wrong, or without evidence to support them." *Mihas v. United States,* 618 A.2d 197, 200 (D.C.1992). Therefore, in order to prevail, Peery must establish "that the government presented 'no evidence' upon which a reasonable mind could find guilt beyond a reasonable doubt." *Owens v. United States,* 688 A.2d 399, 402 (D.C.1996); *Mihas,* 618 A.2d at 200 (quoting *Robinson v. United States,* 506 A.2d 572, 573 (D.C.1986)).

■ To convict Peery of second-degree theft, the government needed to prove: (1) that "he [Peery] wrongfully obtained the property of [B & K], (2) that at the time he obtained it, he specifically intended 'either to deprive [B & K] of a right to the property or a benefit of the property or to take or make use of the property for [himself] . . . without authority or right,' and (3) that the property had some value." *Nowlin v. United States,* 782 A.2d 288, 291 (D.C.2001) (quoting Criminal Jury Instructions for the District of Columbia, No. 4.38 (4th ed.1993)). It is uncontested that the evidence at trial was sufficient to establish both the first and third elements of second-degree theft. The question we address is whether the government presented sufficient evidence to prove that, at the time Peery used the AMEX card for personal purchases, he knew that he was without the authority to do so.

The trial judge, in evaluating the evidence, formulated the question before him stating:

> [D]id he know that Bernabei and Katz was not authorizing him to spend their money? Use their card, spend their money, answer. I think that one's a lot easier because he admits that he didn't have that authority. He admits that. So the only really [sic] question left of that particular scenario is, [d]id he know he was encumbering them or he was encumbering himself?

In making this determination, the trial judge relied on statements made by Peery to Mapp that he "inadvertently" charged "a couple" of personal expenses on the firm's AMEX card. The trial court determined that these statements were evidence of Peery's guilty conscience and evidence that he knew, at the time of the purchases, he was without authority to use the firm's card for non-business purposes.

■ While we are mindful of the deferential review we accord factual findings by the trial court and examine the evidence in the light most favorable to the government, we still employ the same standard employed by the trial court. *United States v. Covington,* 459 A.2d 1067, 1071 (D.C.1983) (citing *United States v. Hubbard,* 429 A.2d 1334,1337–38 (D.C.1981)). Thus, " 'if the evidence, when viewed in the light most favorable to the government, is such that a reasonable [fact-finder] *must* have a reasonable doubt as to the existence of any of the essential elements of the crime,' then the evidence is insufficient and we must say so." *Rivas v. United States,* 783 A.2d 125, 134 (D.C.2001) (en banc) (citing *Curry,* 520 A.2d at 263) (emphasis in the original). The trial judge's ruling that Peery admitted he did not have authority to use the card for personal purchases is clearly erroneous and unsupported by the record. It is not disputed that

no written policy was in place, and no oral policy was conveyed to Peery with regard to proper use of the firm's AMEX card. He testified that his use of the card for personal expenses was reasonable based on his experience with an identical card at a prior law firm. Although the trial court did not disbelieve that testimony, it gave no weight to it because that card was in his Peery's name rather than the firm's name. Nonetheless, there is no evidence in the record that Peery ever admitted he was without authority to use the card for personal expenses as long as he reimbursed the firm.

Finally, reviewing the statements made by Peery to Mapp, we conclude that both innocent and guilty explanations for Peery's behavior may exist, rendering his actions "insolubly ambiguous." *Rivas*, 783 A.2d at 137; *cf. Speight v. United States*, 599 A.2d 794, 798 (D.C.1991). Recognizing such an ambiguity, in a criminal case, under a standard of beyond a reasonable doubt, "an innocent person in [Peery's] shoes might have acted exactly as he did,"[2] *Rivas*, 783 A.2d at 137; thus a reasonable fact-finder must have had a reasonable doubt as to Peery's knowledge at the time of the purchases. Accordingly, for the foregoing reasons the judgment of conviction is reversed and the case remanded with instructions to enter judgment of acquittal.[3]

*So ordered.*

---

2. It is impossible to tell whether Peery was acting out of consciousness of guilt or merely embarrassment at his financial situation and his need to have charged so many personal items on the firm's card.

3. Because we reverse on another ground, we do not consider Peery's contention that the trial court improperly shifted the burden of proof from the government to the defense.